Christina M. Sprenger, Esq. [State Bar No. 205105]
E-mail: csprenger@lbaclaw.com
Aamir Raza, Esq. [State Bar No. 223530]
E-mail: araza@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
E-mail: LBACOCstaff@lbaclaw.com
959 South Coast Drive, Suite 260
Costa Mesa, California 92626
Telephone No.: (714) 479-0180

Attorneys for Defendants SAN BERNARDINO SHERIFF'S DEPARTMENT, VICTORVILLE POLICE DEPARTMENT, THOMAS BECHTOL, JONATHAN CAHOW, CLAYTON BRANDT, STUART CULLUM, and STARSUN FINCEL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASPER O. CROOK,<br><br>                    Claimant,<br><br>vs.<br><br>SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT; VICTORVILLE POLICE DEPARTMENT; THOMAS BECHTOL, individually and in his official capacity; JONATHAN CAHOW, individually and in his official capacity; CLAYTON BRANDT, individually and in his official capacity; STUART CULLUM, individually and in his official capacity; STARSUN FINCEL, individually and in his official capacity; and DOES 1-10 inclusive, in their individual and official capacities,<br><br>                    Defendants. | ) Case No.: 5:23-cv-02448-JVS-AS<br>)<br>) **DEFENDANTS' OPPOSITION**<br>) **TO PLAINTIFF'S MOTION**<br>) **FOR SUMMARY JUDGMENT**<br>)<br>) *[Separate Statement; Request for*<br>) *Judicial Notice; Notice of Manual*<br>) *Lodging Declaration of Aamir Raza*<br>) *with Exhibits and [Proposed]*<br>) *Judgment submitted concurrently*<br>) *herewith]*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Matter for Determination Before**<br>) **the Honorable Magistrate Alka**<br>) **Sagar** |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

  1.   INTRODUCTION.................................................................................1

  2.   RELEVANT BACKGROUND...........................................................3

  3.   THE COUNTY AND VICTORVILLE POLICE DEPARTMENT ARE NOT LIABLE FOR ALLEGED CIVIL RIGHTS VIOLATIONS.........................5

  4.   INDIVIDUAL DEFENDANTS ARE NOT LIABLE IN THEIR OFFICIAL CAPACITIES AND SHOULD BE DISMISSED ...........................................6

  5.   PLAINTIFF CANNOT PREVAIL AGAINST ANY INDIVIDUAL DEFENDANT ON CLAIMS ARISING FROM ALLEGED VIOLATION OF FOURTH AMENDMENT RIGHTS .......................................................................6

  6.   THE ROOKER-FELDMAN DOCTRINE PROHIBITS THE FEDERAL COURT FROM ORDERING RETURN OF FIREARMS AND AMMUNITION SEIZED PURSUANT TO STATE COURT ORDERS.........................................12

  7.   PUNITIVE DAMAGES ARE UNWARRANTED .......................................15

  8.   CONCLUSION ...................................................................................16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ......................................................................... 11, 12

*Bennett v. Yoshina*,
  140 F.3d 1218 (9th Cir. 1998) ................................................................. 3

*C.B. v. City of Sonora*,
  769 F.3d 1005 (9th Cir.2014) .................................................................. 7

*City of Escondido v. Emmons*,
  139 S.Ct. 500 (2019) ............................................................................ 11

*Cooper v. Ramos*,
  704 F.3d 772 (9th Cir. 2012) ................................................................... 3

*Crowe v. Cnty of San Diego*,
  608 F.3d 406 (9th Cir. 2010) ................................................................. 13

*D.C. Ct. App. v. Feldman*,
  460 U.S. 462 (1983) ................................................................................ 3

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005) ................................................................. 15

*District of Columbia v. Wesby*,
  138 S.Ct. 577 (2018) ............................................................................ 11

*Elder v. Holloway*,
  510 U.S. 510 (1994) .............................................................................. 10

*Franks v. Delaware*,
  438 U.S. 154 (1978) ......................................................................... 13, 14

*Gasho v. United States*,
  39 F.3d 1420 (9th Cir. 1994) ................................................................. 10

ii

**Page**

*Georgia v. Randolph*,

  547 U.S. 103 (2006) ...........................................................................7

*Hafer v. Melo*,

  502 U.S. 21 (1991) .............................................................................6

*Hamby v. Hammond*,

  821 F.3d 1085 (9th Cir. 2016) .........................................................10

*Hervey v. Estes*,

  65 F.3d 784 (9th Cir. 1995) .............................................................14

*Hunter v. Bryant*,

  502 U.S. 224 (1991) .........................................................................11

*Kentucky v. Graham*,

  473 U.S. 159 (1985) ...........................................................................6

*Kisela v. Hughes*,

  138 S.Ct. 1148 (2018) ......................................................................11

*Malley v. Briggs*,

  475 U.S. 335 (1986) ...................................................................10, 12

*Megargee v. Wittman*,

  550 F.Supp.2d 1190 (E.D. Cal. 2008) .............................................15

*Monell v. Dep't of Social Servs. of City of N.Y.*,

  436 U.S. 658 (1978) .......................................................................5, 6

*Navajo Nation v. U.S. Forest Serv.*,

  535 F.3d 1058 (9th Cir. 2008) ...........................................................6

*New Jersey v. T.L.O.*,

  469 U.S. 325 (1985) ...........................................................................7

*Ohio v. Robinette*,

  519 U.S. 33 (1996) .............................................................................7

**Page**

*Patel v. City of Long Beach,*

    564 Fed. App'x 881 (9th Cir. 2014)............................................................5

*Pearson v. Callahan,*

    555 U.S. 223 (2009) .......................................................................................9

*Perkins v. City of W. Covina,*

    113 F.3d 1004 (9th Cir. 1997).....................................................................10

*Reynolds v. County of San Diego,*

    84 F.3d 1162 (9th Cir. 1996).......................................................................12

*Richardson v. Oldham,*

    12 F.3d 1373 (5th Cir. 1994)..................................................................10, 11

*Roberts v. Los Angeles City Fire Dep't,*

    86 F.Supp.2d 990 (C.D. Cal. 2000)............................................................13

*Rooker v. Fidelity Trust Co.,*

    263 U.S. 413 (1923) .......................................................................................3

*Saucier v. Katz,*

    533 U.S. 194 (2001) .................................................................................9, 11

*Saved Magazine v. Spokane Police Dep't,*

    19 F.4th 1193 (9th Cir. 2021)........................................................................5

*Scott v. Harris,*

    550 U.S. 372 (2007) ...................................................................................8, 9

*Sharp v. County of Orange,*

    871 F.3d 901 (9th Cir. 2017)........................................................................11

*Taylor v. Barkes,*

    135 S.Ct. 2042 (2015) .................................................................................10

*Thorsted v. Kelly,*

    858 F.2d 571 (9th Cir. 1988).......................................................................10

**Page**

*Trevino v. Gates*,

   99 F.3d 911 (9th Cir. 1996) ................................................................. 5

*United States v. Cormier*,

   220 F.3d 1103 (9th Cir. 2000) .............................................................. 7

*Vos v. City of Newport Beach*,

   892 F.3d 1024 (9th Cir. 2018) .............................................................. 9

*White v. Pauly*,

   137 S.Ct. 548 (2017) .......................................................................... 11

*Young v. Murphy*,

   90 F.3d 1225 (7th Cir. 1996) .............................................................. 13

**Statutes**

42 U.S.C. § 1983 ................................................................... 5, 10, 15

Federal Rules of Civil Procedure, Rule 56(f) ................................. 3, 6, 12

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ............................................. 5

Ninth Circuit Model Civil Jury Instruction 5.5 ................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION.

Defendants San Bernardino Sheriff's Department, Victorville Police Department, Thomas Bechtol, Jonathan Cahow, Clayton Brandt, Stuart Cullum, and Starsun Fincel (collectively "Defendants") submit the following opposition to Plaintiff Jasper Crook's ("Plaintiff") Motion for Summary Judgment ("MSJ"). Plaintiff is proceeding pro se, and the MSJ is silent/unclear as to which claims summary judgment is sought – or the basis for the request. It seems that Plaintiff's MSJ is solely focused on the propriety of the Permanent Restraining Order, the Search Warrant, and whether or not consent was given to the search – rather than on the elements necessary to move for summary judgment on the claims in Complaint.

The instant case ("Crook #2") arises from the same incident as Central District Case Number 5:22-cv-00010-JVS-SP, entitled *Rachel M. Crook v. San Bernardino Sheriff's Department, Victorville Police Department, Thomas Bechtol, Jonathan Cahow, Clayton Brandt, Stuart Cullum, and Starsun Fincel* (Crook #1). Plaintiff Jasper Crook is the husband of Rachel Crook (plaintiff in Crook #1) – Complaint, Dkt. No. 1 at ¶ 3. The event complained of in both Crook #1 and Crook #2 is the December 2, 2021 consensual search of Mr. and Mrs. Crook's home. *Compare* Complaint at ¶ 2-3 with concurrently filed Request for Judicial Notice ("RJN"), Exhibit C ("Crook #1 Complaint") at p. 55-61.

The Defendants[1] named in both actions are identical. *Id.* Mr. Crook was not a party in Crook #1, and Mrs. Crook is not a party here. Nonetheless, a declaration from her is attached to the Complaint here and Mr. Crook submitted a declaration in Crook #1 in opposition to Defendants' summary judgment motion in Crook #1. Opposition Separate Statement, Undisputed Material Fact ("UMF") No. 40.

---

[1] As the Defendants named in both this matter and Crook #1 are identical, the term "Defendants" refers, interchangeably, to the Defendants named in this action and in Crook #1.

Simply, the issues presented here have already been conclusively litigated and determined by this very Court in Crook #1. UMF No. 41.  In Crook #1, Ms. Crook and Defendants filed cross motions for summary judgment.  RJN, Ex. C at p. 22:8-9. Upon determining the undisputed facts in Crook #1 (whose record is identical to the record here, and included a declaration from Plaintiff regarding the consent to the search) the Court entered judgment in favor of Defendants.  RJN, Ex. C at p. 25-29. Simply, Plaintiff (and his wife) cannot get a second bite at the apple by bringing successive litigation on the same incident.[2,3]

As established in Crook #1 (and shown by the identical evidence submitted here) Defendants went to Plaintiff's home pursuant to a valid search warrant ("Search Warrant"), Declaration of Aamir Raza ("Raza Decl."), ¶ 5, Ex. G,  issued in connection with a restraining order against Mr. Crook that precluded him from having access to firearms.  UMF No. 42.  Upon arrival, Plaintiff spoke with the Deputies and consented to the search.  UMF No. 39.  During the search, Plaintiff opened several firearms safes containing firearms and ammunition, which were then removed by Defendants.   UMF No. 43.

The Crook #1 Complaint and the Complaint here seek the same relief, for declaratory and injunctive relief for alleged violations of their civil rights during the consensual search and seeking return of the firearms.  The Complaint in this

---

[2] Tellingly, Plaintiff filed the instant action on December 1, 2023; two months after the Court in Crook #1 entered judgment in favor of Defendants.  As noted above, Plaintiff was well aware of Crook #1 (not only was his wife the plaintiff therein, but Plaintiff submitted a declaration supporting her position therein.  Instead of joining in that action, Plaintiff waited until an (unfavorable) determination was reached in Crook #1 before deciding to bring this litigation.

[3] Crook #1 is currently on appeal to the Ninth Circuit.  The matter has been fully briefed and is awaiting either oral argument or a decision on the submitted briefing. Due to this procedural irregularity, Defendants were procedurally unable to consolidate the two actions (with judgment having already been entered in Crook #1).

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

litigation is also clear that the two cases are related to the same transaction, referencing Crook #1 and Mrs. Crook's claims in ¶ 75.

Summary judgment was granted in Crook #1 for a variety of reasons beyond Plaintiff's consent to the search, each of which are equally applicable (and preclusive) here, including that the entity Defendants are entitled to summary judgment on the *Monell* claims, that warrant was valid, that the Rooker-Feldman[4] doctrine applies to the warrant, that the equal protection claims fail as a matter of law and that qualified immunity applied. Based on the undisputed (and indisputable) facts contained in the evidence and this Court's prior rulings in Crook #1, it is clear that Plaintiff is not entitled to summary judgment – in no small part because the audio recording of the encounter demonstrates consent to the search.  Additionally, Defendants request that this Court enter judgment in their favor pursuant to Fed. R. Civ. Pro Rule 56(f), as the undisputed evidence demonstrates that not should Plaintiff's MSJ be denied, but that Defendants are entitled to summary judgment on the undisputed facts.[5]

## 2.    <u>RELEVANT BACKGROUND</u>.

On October 26, 2021, the Superior Court of California, County of San Bernardino, issued a temporary restraining order ("TRO") against non-party Jasper

---

[4] As noted by the Court in Crook #1: "The *Rooker-Feldman* doctrine, derived from two United States Supreme Court opinions, provides that federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions. *See D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482-86, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998) (as amended)." RJN, Ex. C at p.37.  Federal district courts are not de facto courts of appeal from state court decisions. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).

[5] Defendants note that should the Court elect not to grant summary judgment in favor of the non-movant Defendants under FRCP Rule 56(f), that Defendants intend to file a summary judgment of their own, prior to the February 6, 2025 deadline to do so. Dkt. No. 22, § 3.

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Crook.  Request for Judicial Notice ("RJN") ¶ 1, Ex. A.  The TRO prohibited Mr. Crook from owning, possessing, or having firearms or ammunition.  RJN, Ex. A at p. 7.  On November 15, 2021 and November 16, 2021, the State court held hearings on an application for workplace violence restraining order filed against Mr. Crook. RJN, Ex. B ("Permanent Restraining Order").  Plaintiff attended those hearings. UMF No. 10.  The State court granted the requested order.  RJN, Ex. B at p. 16. Plaintiff was again prohibited Mr. Crook from owning, possessing, or having firearms or ammunition.  UMF No. 42.

On December 2, 2021, more than two weeks after the hearing on the Restraining Order, the individual Defendants went to the Crook residence to recover firearms that had not been surrendered or sold, as they were required to be by Paragraph 8 of the Restraining Order.  UMF No. 42.  Plaintiff was present when the Individual Deputies arrived.  UMF No. 39, 43.  The exchange with Plaintiff is documented on audio belt recording and shows that he was presented with a copy of the Restraining Order and consented to the search of the home and the recovery of the firearms.  Raza Decl., ¶ 2-3, Ex. D ("Audio Recording") and E ("Transcript of Police Department Audio Recording"), at p. 8-15.)

The Permanent Restraining Order was issued against Plaintiff and by its terms, Plaintiff was not allowed to have access to firearms.  Pursuant to the Permanent Restraining Order, Defendant Bechtol obtained a search warrant to recover any firearms that Plaintiff owned or had access to.  Plaintiff then consented to a search of his residence and to the recovery of firearms which he had access to ("Search and Recovery").  It is undisputed that Plaintiff had access to all of the firearms in home: not only did he state he had access to safes in which they were stored, he opened those safes for the Individual Defendants.  Raza Decl., ¶ 2, Ex. D at 8 minutes 20s to 11 minutes 23s.

/ / /

/ / /

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**3.** **THE COUNTY AND VICTORVILLE POLICE DEPARTMENT ARE NOT LIABLE FOR ALLEGED CIVIL RIGHTS VIOLATIONS.**

Plaintiff's MSJ is brought against all defendants, including the entity ones. However, a local governing body is not liable for alleged civil rights violations under 42 U.S.C. section 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). "[A] municipality cannot be held liable under §1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. "Respondeat superior" essentially means an employer is liable for the wrongful acts of an employee acting within the scope of their employment. *See* Black's Law Dictionary (11th ed. 2019). Given this, a public entity is only liable for the civil rights violations caused by an unconstitutional policy, custom, or practice of the entity itself. A litigant must establish the existence of a "well settled" constitutional practice to establish liability against the public entity. An "isolated or sporadic incident" cannot establish the existence of a well-settled policy. *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) (citing *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996)).

San Bernardino County Sheriff's Department and the Victorville Police Department, operated by the Sheriff's Department, are "local governing bodies" or public entities. The Complaint does not identify any well-settled "policy, custom, or practice" that was the moving force behind the alleged civil rights violations. The single encounter alone does not establish such a custom. Given this, Plaintiff cannot prevail against the Sheriff's Department or the Victorville Police Department. This same issue was litigated and determined in Defendants' favor in Crook #1. UMF No. 41. Plaintiff failed to give adequate notice in the Complaint of any alleged unconstitutional policy, and cannot cure that defect now. *Patel v. City of Long Beach*, 564 Fed. App'x 881, 882 (9th Cir. 2014) ("Allowing a plaintiff to proceed on a new theory [at the summary judgment stage] would prejudice defendants");

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court").

Accordingly, Plaintiff's MSJ fails as to the Sheriff's Department and Victorville Police Department, and in fact both the Sheriff's Department and Victorville Police Department should be dismissed as they are entitled to judgment as a matter of law on the undisputed facts.  Fed. R. Civ. Pro. Rule 56(f).

## 4.    <u>INDIVIDUAL DEFENDANTS ARE NOT LIABLE IN THEIR OFFICIAL CAPACITIES AND SHOULD BE DISMISSED.</u>

An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55); also see *Hafer v. Melo*, 502 U.S. 21 (1991). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25. Each of the individual Defendants were added to the docket for this case in their individual and their official capacities. No viable claim has been stated against the County, so the official capacity claims should also be dismissed. Alternately, the official capacity claims should be dismissed as redundant to the claims against the County.  As with the other issues, this same issue was litigated and determined in Defendants' favor in Crook #1.  UMF No. 41.

## 5.    <u>PLAINTIFF CANNOT PREVAIL AGAINST ANY INDIVIDUAL DEFENDANT ON CLAIMS ARISING FROM ALLEGED VIOLATION OF FOURTH AMENDMENT RIGHTS.</u>

As with the other issues, this same issue was litigated and determined in Defendants' favor in Crook #1.  UMF No. 41. The Fourth Amendment prohibits warrantless, unreasonable searches and seizures of property. Under the totality of the circumstances, the individual Defendants did not violate Plaintiff's Fourth

Amendment rights. Even if the rights were violated, which they were not, the individual Defendants would be entitled to qualified immunity.

"Determining the reasonableness of any search involves a two-fold inquiry: first, one must consider whether the … action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *C.B. v. City of Sonora*, 769 F.3d 1005, 1023 (9th Cir.2014) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985)). It is a well-settled exception to the warrant requirement that an "individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000); see also *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).

A similar reasonableness standard is applied to the seizure of property. Warrantless seizure can be unreasonable. However, warrantless seizure of property does not violate a person's civil rights when consent is given. An individual can give "voluntary and intelligent consent" to waive Fourth Amendment rights. The voluntary nature of consent is evaluated under a five-factor totality of the circumstances test, that considers a person's custody status, whether guns were drawn, whether Miranda warnings were given, whether the consenting person was told he had the right to refuse, and whether the consenting person was told a search warrant could be obtained. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

Plaintiff voluntarily and intelligently consented to the collection of all firearms and ammunition in the home. Detective Bechtol and Sergeant Cahow spoke to Plaintiff at the door and explained the situation with the restraining order and

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

disclosed that they had already acquired a search warrant. Raza Decl., ¶ 2, Ex. D at 8 minutes 20s to 11 minutes 23s. They did not put Plaintiff into handcuffs or draw their service weapons. Although they did not tell Plaintiff he had a right to refuse, it was not necessary under the circumstances as: 1) a search warrant had already been obtained and 2) they were just conversing with him to see if he would cooperate before formally executing the search warrant. *Id.* The audio recording indicates everyone was pleasant and that Plaintiff was shown the final restraining order. *Id.* in response, Mr. Crook voluntarily and intelligently consented to allow the deputies to enter the home for the purpose of collecting the firearms and ammunition in his possession for safekeeping at the Victorville Police Department. UMF No. 39.

The individual deputies all relied in good faith on the warrant issued by state court judge to search the Crook residence and to seize firearms and ammunition found therein. The federal court cannot set aside that search warrant. Further, Plaintiff consented to the search in lieu of the execution of the warrant. *Id.* Plaintiff's discussion with deputies at the door is documented in the audio recording. Mr. Crook allowed deputies into the home and opened four safes, including ones that were concealed from view. UMF No. 43. By opening the safes, Mr. Crook demonstrated he had access to all these secured spaces in the home. Under all the circumstances, the search and seizure did not violate Plaintiff's Fourth Amendment rights.

At a minimum, Plaintiff's claims that the search was undisputedly not-consensual are in direct contradiction to the evidence and Plaintiff's MSJ should be denied. Importantly, where the parties tell differing stories as to what happened and an objective recording exists, the Court should adopt the facts as they are contained in the objective recording. *See*, *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769 (2007) (in ruling on summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment … Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; *it should have viewed the facts in the light depicted by the videotape")* (emphasis added); *see also, Vos v. City of Newport Beach*, 892 F.3d 1024, 1040 n. 3 (9th Cir. 2018) (a court may rely upon video evidence "to determine the propriety of summary judgment") (citing *Scott*, 550 U.S. at 377-81). This Court has already gone through this very exercise in Crook #1, determining after reviewing the audio recording (and despite Plaintiff's declaration that he had not consented), that the search was in fact consensual. RJN, Ex. C at p. 40-44; Raza Decl., ¶ 7, Ex. H.

Even if Plaintiff could establish that his rights were violated, which he cannot, the individual Defendants are entitled to qualified immunity because reasonable officers could have believed that their conduct was reasonable under the circumstances.

In a suit against a law enforcement officer for an alleged violation of a constitutional right, the Court must consider a two-part test in evaluating qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) (abrogated as to the rigidity of the sequence of the test in *Pearson v. Callahan*, 555 U.S. 223 (2009)). The first inquiry is whether the facts alleged, in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. *Id*. at 201. If no constitutional right would have been violated, the defendant is entitled to qualified immunity. *Id*. Assuming a plaintiff clears the first hurdle of the qualified immunity test, the second inquiry is whether the right was *clearly established*. *Id*. A broad inquiry is not enough; "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

9

As noted above, consent was given by Plaintiff to the Search and Recovery. Plaintiff's consent was informed and rationale in the face of the Permanent Restraining Order.  The individual Defendants were entitled to rely on the information in their systems, which indicated that Plaintiff had been served with the Permanent Restraining Order.  Simply, all the facts support that the individual Defendants actions were proper and legal in all respects.

As to the second prong, law enforcement officers are entitled to qualified immunity from liability under § 1983.  *Thorsted v. Kelly*, 858 F.2d 571 (9th Cir. 1988).  Qualified immunity is designed to shield from liability, "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 343 (1986).  The doctrine of qualified immunity assumes that officers do not "knowingly violate the law." *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994).  "The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510 (1994) (quotation omitted).  To overcome the ***presumption of immunity***, "a plaintiff must show that the officer's conduct was so egregious that any reasonable person would have recognized a constitutional violation."  *Gasho*, 39 F.3d at 1438 (quotation omitted). The ***plaintiff has the burden*** to establish that the right allegedly violated was clearly established at the time of the alleged misconduct.  *Perkins v. City of W. Covina*, 113 F.3d 1004, 1008 (9th Cir. 1997).  Plaintiff has the burden of providing analogous case law to the Court.  *See Richardson v. Oldham*, 12 F.3d 1373, 1381 (5th Cir. 1994) (plaintiff must demonstrate "the illegality of the challenged conduct was clearly established in factual circumstances closely analogous to those of [the] case [at bar]"); *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) ("a plaintiff must prove that 'precedent on the books' at the time of the officials acted 'would have made clear to [them] that [their actions] violated the Constitution…'") (quoting *Taylor v. Barkes*, 135 S.Ct. 2042, 2045 (2015) (emphasis added)).  The inquiry must

be undertaken in light of the **specific context** of the case, not as a broad general

proposition.  *See Saucier*, 533 U.S. at 201; *Richardson* 12 F.3d at 1381.

The Supreme Court has…repeatedly told courts—and the Ninth Circuit in

particular, not to define clearly established law at a high level of generality. The

general proposition, for example, that an unreasonable search or seizure violates the

Fourth Amendment is of little help in determining whether the violative nature of

particular conduct is clearly established.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743

(2011) (internal citations omitted); *see also White v. Pauly*, 137 S.Ct. 548, 552

(2017) (emphasizing that defining the law at a high level of generality would allow

plaintiffs "to convert the rule of qualified immunity into a rule of virtually

unqualified liability" (internal quotation marks omitted)).  The Supreme Court

recently rearticulated that qualified immunity applies unless "'existing precedent

**squarely governs** the specifics facts at issue.'"  *City of Escondido v. Emmons*, 139

S.Ct. 500, 503 (2019) (per curiam) (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1153

(2018) (per curiam)) (emphasis added).  The Supreme Court explained in *Emmons*

that "'[w]hile there does not have to be a case directly on point, existing precedent

must place the lawfulness of the particular [action] beyond debate.'"  139 S.Ct. at

504 (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 581 (2018)); *see also*

*Sharp v. County of Orange*, 871 F.3d 901, 910-11 (9th Cir. 2017) ("Plaintiffs must

point to prior case law that articulates a constitutional rule specific enough to alert

*these* deputies *in this case* that *their particular conduct* was unlawful…") (emphasis

in original).

If a reasonable officer in the defendant's position could have believed his

conduct was lawful in light of clearly established law, he is entitled to qualified

immunity.  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  "The inquiry is not whether

another reasonable or more reasonable interpretation of the events can be

constructed… after the fact.  Rather, the issue is whether a reasonable officer could

have believed that his conduct was justified." *Reynolds v. County of San Diego*, 84

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

F.3d 1162, 1170 (9th Cir. 1996) (quotation omitted). "[C]onduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (quotation omitted). Hence, if officers "of reasonable competence" could disagree on whether an action is constitutional, immunity applies. *Malley*, 475 U.S. at 341.

As noted above, the law clearly establishes that the individual Defendants acted legally and properly. Further, Plaintiff has not cited any analogous precedent clearly established the illegality of the Individual Defendants' actions. In failing to do, Plaintiff's MSJ fails and, conversely, judgment may be entered by the Court in Defendants' favor under FRCP Rule 56(f).

**6.** **THE ROOKER-FELDMAN DOCTRINE PROHIBITS THE FEDERAL COURT FROM ORDERING RETURN OF FIREARMS AND AMMUNITION SEIZED PURSUANT TO STATE COURT ORDERS.**

The federal court cannot order the County to return firearms and ammunition owned by Plaintiff because it would violate the well-settled Rooker-Feldman doctrine, which protects state court orders from review by federal courts. The seizure was proper under those state court orders. As with all the other issues, this issue was also decided in Crook # 1. UMF No. 41.

The Rooker-Feldman doctrine prohibits the federal district court from reviewing the validity of state court proceedings, including the validity of searches and seizures made pursuant to a warrant issued by a state court. The doctrine prohibits both direct appeals and "de facto" appeals from a state court decision. De facto appeals are those where a party is (1) asserting as her legal injury legal error by the state court and (2) seeks as her remedy relief from the state court decision. "The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Roberts v. Los Angeles City Fire Dep't*, 86 F.Supp.2d 990, 993

(C.D. Cal. 2000) (citing *Young v. Murphy*, 90 F.3d 1225 (7th Cir. 1996)). Further, the doctrine also precludes district court jurisdiction over any issue that is "inextricably intertwined" with the state court's decision such that "if the general claim succeeds only to the extent that the state court wrongly decided the issues before it" it cannot be considered.

The injunctive relief requested, an order to compel the return of firearms and ammunition seized from the Crook residence, cannot be issued because it would improperly invalidate decisions made by the state court. The state court issued a TRO, a permanent restraining order, and a search warrant based on a probable cause statement that all compelled the removal of firearms from the Crook family residence. Detective Bechtol and his colleagues relied on these three decisions when Plaintiff ultimately consented to surrendering all the firearms and ammunition in his possession or control. To the extent Plaintiff contends the "fraudulent temporary restraining order" led to the seizure of her firearms, that order cannot be set aside by the federal court under a de facto appeal. For these reasons, Plaintiff's MSJ fails.

Further, to the extent that Plaintiff argues that any mistake in the Search Warrant affidavit entitle him to relief, he is incorrect. As noted in the Report and Recommendation in Crook #1 (RJN, Ex. C at p. 36):

> "Affidavits supporting search warrants are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). "A misrepresentation in the affidavit constitutes a violation of the Fourth Amendment if the misrepresentation is material." *Crowe v. Cnty of San Diego*, 608 F.3d 406, 435 (9th Cir. 2010) (citing *Franks*). But "[a]llegations of negligence or innocent mistake [in an affidavit supporting a search warrant] are insufficient" to challenge the warrant's validity. *Franks*, 438 U.S. at 171. Rather, a "plaintiff alleging judicial deception must make a substantial showing of deliberate falsehood or reckless disregard

1  for the truth and establish that but for the dishonesty, the

2  challenged action would not have occurred." *Hervey v. Estes*, 65

3  F.3d 784, 788 (9th Cir. 1995) (citing *Franks*). Further, an officer

4  who submits an affidavit including statements they know are false

5  – or false statements included in reckless disregard of the truth –

6  cannot be said to have acted reasonably, and therefore loses the

7  shield of qualified immunity. *Id.*

8

9  Here, plaintiff conclusorily alleges that defendant Bechtol's

10  probable cause statement was fraudulent, that he falsified his

11  affidavit, and that his statements intentionally deceived the state

12  court judge. P's MSJs ¶ 15; P's Opp. at 7, 15. But these

13  allegations are utterly unsupported and come nowhere close to a

14  substantial showing of deliberate falsehood. The mistakes plaintiff

15  points to – whether Mr. Crook was present when the Final Order

16  was issued, as opposed to just at the hearing on the Final order, and

17  whether the warrant was likely to uncover evidence of a felony

18  versus a misdemeanor – do not on their face suggest deliberate or

19  reckless falsehood, much less as to a material matter, and nor has

20  plaintiff offered any other evidence of deliberate or reckless

21  falsehood. As such, plaintiff has failed to show that,

22  notwithstanding any inaccuracies in the supporting affidavit, the

23  search warrant was invalid or violated her Fourth Amendment

24  rights.

25  As with all of the other issues above, this Court has already determined this

26  issue, conclusively in Defendants' favor, in Crook #1.  In fact, the Court's order in

27  Crook #1, based on the same evidence, is not only instructive but also preclusive

28  here.

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**7.    <u>PUNITIVE DAMAGES ARE UNWARRANTED</u>.**

Punitive damages may be awarded in a § 1983 action only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). A punitive damages claim is subject to summary adjudication "where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008). Plaintiff has the burden of proving that punitive damages should be awarded. *See* Ninth Circuit Model Civil Jury Instruction 5.5 (citing *Dang*, 422 F.3d at 807). Plaintiff has no evidence that any of the Individual Defendants acted with evil intent or callous indifference to Plaintiff's constitutional rights and, accordingly, there is insufficient evidence to support punitive damages.

Plaintiff's MSJ does not mention punitive damages, nor does it assert that the Individual Defendants acted with evil intent. Out of an abundance of caution, the Individual Defendants include this discussion as the relief sought by Plaintiff's MSJ is unclear.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**8.    <u>CONCLUSION</u>.**

For all of the above reasons, not only should Plaintiff's MSJ be denied, but instead Defendants should be granted summary judgment under Federal Rule of Civil Procedure, Rule 56(f).

Respectfully submitted,

LAWRENCE BEACH ALLEN & CHOI, PC

Dated: November 12, 2024    By   /s/ Aamir Raza

CHRISTINA M. SPRENGER
AAMIR RAZA
Attorneys for Defendants
SAN BERNARDINO SHERIFF'S
DEPARTMENT, THOMAS BECHTOL,
JONATHAN CAHOW, CLAYTON
BRANDT, STUART CULLUM, and
STARSUN FINCEL

The undersigned, counsel of record for Defendants certifies that this brief contains 5007 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 12, 2024    By   /s/ Aamir Raza

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

     I, Debbie Pryor, am employed in the aforesaid County, State of California; I am

4

over the age of 18 years and not a party to the within action; my business address is
959 South Coast Drive, Suite 260, Costa Mesa, California 92626.

5

6

     On November 12, 2024, I served the **DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

7

on the interested parties in this action by causing a true copy thereof, enclosed in a
sealed envelope, addressed as follows:

8

9

Jasper O. Crook
19004 Sheffield Street

10

Hesperia, California 92345

11

*Claimant in Pro Se*

12

13

 X   BY MAIL:  I am "readily familiar" with the firm's practice of collection and
processing correspondence for mailing.  Under that practice it would be

14

deposited with the U.S. Postal Service on that same day with postage thereon
fully prepaid at Costa Mesa, California in the ordinary course of business.  I am

15

aware that on motion of the party served, service is presumed invalid if postal

16

cancellation date or postage meter date is more than one day after date of
deposit for mailing in affidavit.

17

18

 X   (Federal) I declare under penalty of perjury under the laws of the United
States of America that the foregoing is true and correct.

19

20

     Executed on November 12, 2024, at Costa Mesa, California.

21

22

_____

23

Declarant[6]

24

25

_____

26

[6] As required, the above-referenced document is accompanied by an unsigned
affidavit of service, to be signed by the Declarant following service.  The method of

27

service and date of service listed herein are to be used in calculating dates triggered

28

by service of this document.  The Declarant will maintain the signed original of this
affidavit and will submit it to the Court if appropriate.

1

DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT